UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

JOCELYN SANCHEZ,

                            Plaintiff,

              v.

NEW YOK CITY TRANSIT AUTHORITY,
MANHATTAN & BRONX SURFACE TRANSIT
OPERATING AUTHORITY, CARLOS PACHECO,
and JAMES MCGRATH,

                            Defendants.

**MEMORANDUM AND ORDER**

17-CV-5818 (LDH) (SMG)

---

L<small>A</small>SHANN D<small>E</small>ARCY HALL, United States District Judge:

      Plaintiff Jocelyn Sanchez brings the instant action against the New York City Transit Authority ("NYCTA"), its subsidiary, the Manhattan & Bronx Surface Transit Operating Authority, and her supervisors, Carlos Pacheco and James McGrath, asserting claims pursuant to the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101, *et seq.* for discrimination and failure to accommodate; the Family Medical Leave Act (the "FMLA"), 29 U.S.C. § 2601, *et seq*. for interference and retaliation; and related claims under New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL"). Plaintiff and Defendants move pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment.

**UNDISPUTED FACTS[1]**

      On or about July 13, 2015, Plaintiff was hired by the Manhattan & Bronx Surface Transit Operating Authority as a probationary bus operator. (Defs.' Reply Statement of Material Facts

---

[1] Unless otherwise noted, the following facts are taken from the parties' statements of material facts pursuant to Local Rule 56.1 and the record of admissible evidence and are undisputed. Facts that are not contradicted by citations to admissible evidence are deemed admitted. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.").

Pursuant to Local Civ. R. 56.1 ("Defs.' Reply 56.1") ¶ 1, ECF No. 41.) Plaintiff's probationary period was initially scheduled to expire on July 12, 2016. (*Id.*, Ex. C at 4, ECF No. 38-4.) That period was subsequently extended and was scheduled to terminate on October 21, 2016. (Defs.' Reply 56.1 ¶ 7.)

By mid-July 2016, Plaintiff had committed several infractions. Specifically, on November 17, 2015, NYCTA received a customer complaint that Plaintiff had recklessly cut the customer off while driving her bus. (*Id.* ¶ 6.) On March 17, 2016, Plaintiff failed to submit a required trip sheet. (*Id.* ¶ 8.) And, on June 22, 2016, Plaintiff struck a tree with her bus. (*Id.* ¶ 9.) Plaintiff was also absent from work on 13 occasions: October 10–11, 2015; November 9–10, 2015; November 12, 2015; December 24, 2015; February 8–12, 2016; and July 18–19, 2016. (*Id.* ¶ 2.) Plaintiff was counseled regarding her failure to submit a doctor's note substantiating two of her October 2015 absences. (*Id.* ¶¶ 3–4.)

On July 18, 2016, Plaintiff began experiencing vaginal discomfort, frequent urination, and blood in her urine. (*See id.* ¶ 28.) That same day, Plaintiff informed the dispatcher on duty that she was "very ill" and that she was going to see a doctor. (*Id.*, Ex. E, ("Pl.'s Dep. Tr.") 22:5–12, ECF No. 38-6.) Plaintiff also informed the dispatcher that she would be absent from work "until further notice." (*Id.*) That same day, Plaintiff visited Dr. Moss. (*Id.* 21:16.) At that visit, Dr. Moss diagnosed Plaintiff with "vaginal pain, gross hematuria, renal stones, and female stress incontinence." (*See* Pl.'s Am. Counterstatement of Material Facts Pursuant to Local Civ. R. 56.1 ("Pl.'s Am. Counter 56.1"), Ex. A at 1, ECF No. 39-2.) Plaintiff's symptoms persisted, so on July 19, 2016, Plaintiff informed NYCTA's FMLA leave coordinator, Cindy Chan, that she had a condition that she "didn't know at that point," but that she was urinating blood and experiencing chronic pain. (Pl.'s Dep. Tr. 22:13–23:11.)

On July 21, 2016, Plaintiff applied for FMLA leave.[2] (Defs.' Reply 56.1 ¶ 14.) According to the leave form, Plaintiff sought 60 days of intermittent leave to run from July 22, 2016 through July 23, 2017. (*Id.*, Ex. F at 2, ECF No. 38-7.)

On July 22, 2016, Plaintiff visited Dr. Chugtai. (Defs.' Reply 56.1 ¶ 19.) Using the FMLA Certification of Health Care Provider form, Dr. Chugtai certified that: (1) Plaintiff's condition, "interstitial cystitis," commenced on approximately July 1, 2016, (*id.*, Ex. G at 1, ECF No. 38-8.); (2) Plaintiff would experience flare ups 1–2 times per month, causing her to be incapacitated for 2–3 days per episode for the next 6 months, (*id.* at 3.); and (3) Plaintiff would be "incapacitated for a single continuous period of time due her medical condition," (*id.* at 2.)

On September 13, 2016, Plaintiff received a letter from the Metropolitan Transportation Authority's Business Service Center's benefits department indicating that she had been approved for intermittent FMLA leave retroactive to July 24, 2016 through October 23, 2016.[3] (*See* Defs.' Reply 56.1 ¶ 22; *id.* Ex. H at 2, ECF No. 38-9.) Plaintiff was absent from work from July 18, 2016–October 5, 2016 as a result of her condition. (*See* Defs.' Reply 56.1 ¶ 2, 39.) When Plaintiff returned to work on October 6, she was terminated. (*Id.* ¶ 25.)

## STANDARD OF REVIEW

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the [movant is] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

[2] Plaintiff's leave application indicated a request for "intermittent leave." (Defs.' Reply 56.1, Ex. F at 2.) Intermittent leave is defined on the application form as "separate blocks of time due to a single qualifying reason." (*Id.*) Plaintiff maintains that she did not check the box requesting intermittent leave. (Defs.' Reply 56.1 ¶ 16.) Instead, according to Plaintiff, the box was pre-populated when she received the form. (*Id.*)

[3] The Metropolitan Transportation Authority is a public benefit corporation responsible for public transportation in New York. *See* https://new.mta.info/.

The movants bear the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004). Where the non-movant bears the burden of proof at trial, the movants' initial burden at summary judgment can be met by pointing to a lack of evidence supporting the non-movant's claim. *Celotex Corp.*, 477 U.S. at 325. Once the movant meets its initial burden, the non-movant may defeat summary judgment only by adducing evidence of specific facts that raise a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250; *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002). The Court is to believe the evidence of the non-movant and draw all justifiable inferences in its favor, *Anderson*, 477 U.S. at 255, but the non-movant must still do more than merely assert conclusions that are unsupported by arguments or facts, *Bellsouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996).

## DISCUSSION

**I.     The ADA**

    **A.     Discrimination**

"Claims alleging disability discrimination in violation of the ADA are subject to the burden-shifting analysis originally established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *McMillan v. City of N.Y.*, 711 F.3d 120, 125 (2d Cir. 2013). Under *McDonnell Douglas*:

> [P]laintiff bears the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination . . . . The burden of production then shifts to defendants, who must offer through the introduction of admissible evidence a non-discriminatory reason for their actions that, if believed by the trier of fact, would support a finding that unlawful discrimination was not a cause of the disputed employment action. Plaintiff then must show that the proffered reason was merely a pretext for discrimination, which may be demonstrated either by the presentation of additional evidence showing that the employer's proffered explanation is unworthy of credence, or by reliance on the evidence comprising the prima facie case, without more.

4

*Heyman v. Queens Village Comm. for Mental Health for Jamaica Cmty. Adolescent Prog., Inc.*, 198 F.3d 68, 72 (2d Cir. 1999).

To establish a prima facie case of discrimination under the ADA, a plaintiff must show that: "(1) [her] employer is subject to the ADA; (2) [she] was disabled within the meaning of the ADA; (3) [she] was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) [she] suffered an adverse employment action because of her disability." *McMillan*, 711 F.3d at 125. Defendants do not dispute that they are subject to the ADA or that Plaintiff is disabled within the meaning of the ADA. Instead, Defendants argue that Plaintiff cannot demonstrate that she was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation, or that she suffered an adverse employment action because of her disability. (*See* Defs.' Mem. L. Supp. Mot. Summ. J. ("Defs.' Mem.") 7–12, ECF No. 43-2.) In sum, Defendants contend that Plaintiff's overall poor attendance record and job performance rendered her unqualified for her position as a bus operator, which fatally undermines any contention that she was terminated because of her disability. (*See id*.) The Court agrees.

"An employee cannot be considered otherwise qualified when she is unable to report to work at the time required, because she is not able to perform the essential functions of her job." *Lewis v. New York City Police Dep't*, 908 F. Supp. 2d 313, 326, 328 (E.D.N.Y. 2012) (finding that plaintiff was not qualified to perform the essential functions of her job where, on her yearly performance evaluation, she was rated "below standards" due to her excessive absenteeism, including an absence rate of over 60% over the course of 17 months), *aff'd sub nom*, 537 F. App'x 11 (2d Cir. 2013); *see also Micari v. Trans World Airlines, Inc.*, 43 F. Supp. 2d 275, 281 (E.D.N.Y. 1999) (collecting cases), *aff'd*, 205 F.3d 1323 (2d Cir. 1999). Here, Plaintiff was

5

absent on 13 occasions over the course of ten months. (*See* Defs.' Reply 56.1 ¶ 2.) Plaintiff's poor attendance record deems her unqualified to perform the essential functions of her job. *See Aquinas v. Fed. Exp. Corp.*, 940 F. Supp. 73, 78–79 (S.D.N.Y. 1996) (finding plaintiff unqualified in light of the fact that "her rate of absenteeism was, at all relevant times, unacceptable under existing company standards."); *see also Rinaldi v. Quality King Distributors, Inc.*, 29 F. Supp. 3d 218, 227 (E.D.N.Y. 2014) (finding plaintiff unqualified where plaintiff had ten unexcused absence over the course of three months after being absent for five weeks on FMLA leave). The reason for his should be plain, as showing up to work is an essential function of employment. *See Micari*, 43 F.Supp.2d at 281 ("It is not surprising that attendance has been found to be a prerequisite to performing the essential functions of a job."). That, according to Plaintiff, her July 2016 absences were attributable to her bladder condition does not change the Court's conclusion. (*See* Pl.'s Mem. L. Supp. Cross Mot. Summ. J. ("Pl.'s Mem.") 20–23, ECF No. 44-1.) Indeed, a number of courts have found, as this one does, that "[t]he ADA does not require employers to tolerate chronic absenteeism even when attendance problems are caused by an employee's disability." *Lewis*, 908 F. Supp. 2d at 327 (collecting cases); *see Pierce v. Highland Falls-Fort Montgomery Cent. Sch. Dist.*, 08-CV-1948 (RKE), 2011 WL 4526520, at *5 (S.D.N.Y. Sept. 28, 2011) (stating that even assuming that plaintiff's absences were a result of a recognized disability, plaintiff's absences render him unqualified); *see also Micari*, 43 F. Supp. 2d at 28.

      Bolstering the conclusion that Plaintiff was unqualified to perform the essential functions of her job is a view of her entire tenure, which was punctuated by other infractions—striking a tree with her bus, failing to submit a required trip sheet, failing to provide doctor's notes substantiating her October 2015 absences, and receiving a customer complaint concerning her

6

reckless driving. (*See* Defs.' Reply 56.1 ¶¶ 3, 6, 8.) Notably, these infractions occurred while Plaintiff was in a probationary period. (*See id.* ¶ 7.) Plaintiff's poor job performance while on probation is an additional basis to find her unqualified. *See Mescall v. Marra*, 49 F. Supp. 2d 365, 374 (S.D.N.Y. 1999) (finding former guidance counselor unqualified for her position because she missed 41 days during her probationary period). Against these facts, Plaintiff has failed to establish that she was qualified to perform the essential functions of her job as a bus operator.[4]

### B. Failure to Accommodate

To succeed on a failure to accommodate claim, a Plaintiff must demonstrate that: she is a person with a disability; the employer had notice of her disability; and with reasonable accommodation she could perform the essential functions of the job at issue. *McMillian*, 711 F.3d at 125–126. In addition, and of particular relevance here, a plaintiff must also establish that the employer has refused to make such accommodations. *Id.* It is axiomatic, therefore, that a plaintiff must have in fact requested an accommodation to hold her employer liable for failure to accommodate. *See McElwee v. Cnty. of Orange*, 700 F.3d 635, 641–42 (2d Cir. 2012) ("[I]t is generally the responsibility of the individual with a disability to inform the employer that an accommodation is needed") (internal quotations omitted); *Lewis*, 908 F. Supp. 2d at 326–327 ("Plaintiff bears the initial burden of *suggesting* a reasonable accommodation.") (emphasis added). Fatal to Plaintiff's claim is that there is simply no evidence that she ever requested a

---

[4] Even if Plaintiff had established that she was qualified for her position, she nonetheless fails to make out a prima facie case because she has not adduced sufficient evidence that her termination was because of her disability. Indeed, Plaintiff's cross-motion is devoid of any argument in this regard. (*See generally* Pls.' Mem.) Had Plaintiff adduced sufficient evidence that her termination was because of her disability, she would still be unable to defeat Defendants' motion because Defendants have provided a legitimate, nondiscriminatory reason for her termination—her overall poor performance. *See Canales-Jacobs v. New York State Office of Court Admin.*, 640 F. Supp. 2d 482, 500 (S.D.N.Y. 2009) ("[O]n-the-job misconduct and poor work performance always constitute legitimate and nondiscriminatory reasons for terminating employment . . . ."). Because there is no evidence or argument that this reason is mere pretext, Plaintiff's claim must fail as a matter of law.

7

reasonable accommodation. Instead, Plaintiff maintains only that her "sick leave did not create an undue hardship" to Defendants.[5] (Pl's Mem. 20–23.) This contention alone is insufficient to satisfy Plaintiff's burden, and her claim for failure to accommodate fails as a matter of law.

## II. The FMLA

Under the FMLA "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). On return from such leave, the employee shall be "restored by the employer to the position of employment held by the employee when the leave commenced" or "restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." *Id*. § 2614(a)(1). The FMLA prohibits employers from interfering with, restraining, or denying the exercise of or the attempt to exercise, any right provided under the statute. *See id*. § 2615(a)(1). The FMLA further prohibits employers from discharging or otherwise discriminating against any individual for opposing any practice made unlawful by the statute. *See id*. § 2615(a)(2). The Second Circuit recognizes two separate claims under the FMLA—one for interference with protected rights and one for retaliation. *See Hockenjos v. Metro. Transportation Auth.*, 14-CV-1679, 2016 WL 2903269, at *5 (S.D.N.Y. May 18, 2016), *aff'd sub nom. Hockenjos v. MTA Metro-N. R.R.*, 695 F. App'x 15 (2d Cir. 2017). Plaintiff asserts both.

### A. Interference

---

[5] Whether Defendants would suffer undue hardship is only relevant to Plaintiff's city law claim for failure to accommodate. *See Jacobsen v. N.Y.C. Health & Hosps. Corp.*, 22 N.Y.3d 824, 835 (2014) ("Unlike the State HRL, the City HRL places the burden on the employer to show the unavailability of any safe and reasonable accommodation and to show that any proposed accommodation would place an undue hardship on its business.") As mentioned below, the Court does not reach the merits of that claim.

To succeed on an interference claim, a plaintiff must establish: "(1) that she is an eligible employee under the FMLA; (2) that defendant is an employer as defined [under the] FMLA; (3) that she was entitled to leave under the FMLA; (4) that she gave notice to the defendant of her intention to take leave; and (5) that she was denied benefits to which she was entitled under the FMLA." *Id.*

The parties do not dispute that Plaintiff is an employee under the FMLA, that Defendants are employers under the FMLA, that Plaintiff was entitled to leave under the FMLA, and that Plaintiff gave notice to Defendants of her intention to take leave. As Plaintiff correctly argues, the analysis in this case turns on whether she was denied benefits to which she was entitled. (*See* Pl.'s Mem. 10.) Plaintiff argues that Defendants interfered with her right to take leave for the full period to which she was entitled by: (1) categorizing her July 18 and July 19 absences as ordinary sick leave; and (2) misleading her regarding the FMLA leave to which was she was entitled. (*Id*. 10–12.) Defendants maintain that each of Plaintiff's arguments is wholly without merit. (*See* Defs.' Reply Mem. L. Supp. Mot. Summ. J. ("Defs.' Reply") 6–8, ECF No. 45.). The Court agrees.

"Employee eligibility [for FMLA leave] is determined (and notice must be provided) at the commencement of the first instance of leave for each FMLA–qualifying reason in the applicable 12–month period." 29 C.F.R. § 825.300(b)(1). "All FMLA absences for the same qualifying reason are considered a single leave and employee eligibility as to that reason for leave does not change during the applicable 12–month period." *Id*.

Here, Plaintiff complains that she was wrongly denied FMLA leave on July 18 and July 19, and that as a result, those dates were treated as ordinary sick absences improperly supporting her termination. (*See* Pl.'s Mot. 10.) However, absent from the record is any evidence that

9

Plaintiff sought FMLA leave for July 18 and July 19. To the contrary, Plaintiff requested 60 days of intermittent leave, to commence July 22, 2016. (Defs.' Reply 56.1, Ex. F. at 2.) Consistent with Plaintiff's request, Dr. Chugtai certified that Plaintiff's illness "so incapacitated [Plaintiff] that she was incapable of performing her duties from July 22, 2016 to October 5, 2016."[6] (Pl.'s Am. Counterstatement, Ex. C, ECF No. 39-4.) It is undisputed that Plaintiff was approved for leave from July 24, 2016 to October 23, 2016. (*See* Defs.' Reply 56.1 ¶ 22; *id*. Ex. H at 2.) The Court is unable to find a single case, and Plaintiff has offered none, where an FMLA interference claim was allowed where the plaintiff was granted leave for the period requested.[7] Indeed, it seems self-evident that a plaintiff cannot be denied leave that she failed to request. *See Di Giovanna v. Beth Israel Med. Ctr.*, 651 F. Supp. 2d 193, 203 (S.D.N.Y. 2009) (dismissing interference claim where, among other things, there was no admissible evidence that either [supervisor] ever told [plaintiff] that he could not or should not take off the day he requested). Plaintiff's interference claim fails as a matter of law.[8]

---

[6] An employer is permitted to require an employee who might be qualified to receive FMLA leave to provide a certification issued by the employee's health care provider, detailing such information as the diagnosis and the date and duration of the condition. *See* 29 C.F.R. § 825.306(a). Plaintiff submitted a certification form, which was signed by Dr. Chugtai on July 22, 2016 and certified Plaintiff's incapacitation as of that date. (Pl.'s Am. Counterstatement, Ex. C.) To adopt Plaintiff's position—that she was entitled to FMLA leave beginning July 18—would be inconsistent with the certification of a qualified health care professional. This the Court will not do.

[7] The Court takes judicial notice that July 22, 2016 was a Friday. Thus, July 24, 2016, a Monday, was as a practical matter the first working day Plaintiff's leave commence after receipt of her request. Indeed, Plaintiff complains only of a denial of FMLA leave on July 18 and 19. (*See* Pl.'s Mem. 10.) ("Yet defendants violated the FMLA by allocating two days of FMLA leave beginning on July 18 to the category of sick days.") She makes no mention of July 22 and 23, presumably because those dates fell on the weekend. (*See generally* Pl.'s Mem.)

[8] The Court is similarly unpersuaded by Plaintiff's argument that Defendants interfered by misleading her to believe that the earliest date she could begin FMLA leave was the day after she submitted her application. (*See* Pl's Mem. 11.) In support of this argument, Plaintiff offers up the deposition testimony of Cindy Chan. (*Id*.) Plaintiff maintains that Chan testified that NYCTA will only allow FMLA leave to commence, at the earliest, on the day after an application is submitted. (*Id*.) The cited testimony does not advance Plaintiff's argument. While Cindy Chan testified that "[g]enerally, if the employee comes forward to the depot and applies for FMLA, the person submits the application, the earliest we can give them is the next day," (Pl.'s Am. 56.1 Counterstatement, Ex. B ("Chan Dep. Tr.") 50:8, ECF No. 39-3), she did not testify that she ever conveyed this information to Plaintiff. Likewise, the Court is unpersuaded by Plaintiff's argument that Defendants interfered by pre-populating "intermittent" on her application. (*See* Pl.'s Mem. 11–13). Even if this were true, there is no evidence that this resulted in any interference with Plaintiff's rights to take FMLA leave. *See Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183

(continued…)

B.     Retaliation

To make out a prima facie case of FMLA retaliation, a plaintiff must establish that: "(1) [she] exercised rights protected under the FMLA; (2) [she] was qualified for her position; (3) [she] suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." Potenza v. City of New York, 365 F.3d 165, 168 (2d Cir. 2004). As with Plaintiff's ADA discrimination claim, Defendants maintain that because Plaintiff is unqualified for her position, she failed to make this requisite showing. (See Defs.' Mem. 10–13.) The Court declines to recite its analysis above, but needless the Court agrees. Accordingly, on this basis Plaintiff's claim fails.[9]

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary is GRANTED in part, and Plaintiff's cross-motion is DENIED. Plaintiff's claims for discrimination and failure to accommodate under the ADA and interference and retaliation under the FMLA are dismissed, with prejudice. Having dismissed Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining NYSHRL and NYCHRL claims pursuant to

---

F.3d 155, 162 (2d Cir. 1999) ("We decline to interpret the FMLA as giving an employee a right to sue the employer for failing to give notice of the terms of the Act where the lack of notice had no effect on the employee's exercise of or attempt to exercise any substantive right conferred by the Act.").

[9] Though not necessary to the dismissal of Plaintiff's FMLA retaliation claim, the Court also finds that Plaintiff failed to show the requisite inference of discrimination. Yes, Plaintiff was terminated on the day she returned from leave. (Defs.' Reply 56.1 ¶ 25.) However, where, as here, Defendants have proffered a legitimate nondiscriminatory reason for the alleged retaliatory conduct—Plaintiff's lack of qualification—temporal proximity alone is insufficient to demonstrate that Defendants' reason is pretext. El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 933 (2d Cir. 2010) ("without more, such temporal proximity is insufficient to satisfy [plaintiff's] burden to bring forward some evidence of pretext."); see also Simpson v. N.Y.S Dep't of Civil Servs., 166 F. App'x 499, 502 (2d Cir. 2006) ("While the temporal proximity of these events gives rise to an inference of retaliation for the purposes of appellant's prima facie case, without more, such temporal proximity is insufficient to satisfy appellant's burden to bring forward some evidence of pretext."). Plaintiff's contention that Pacheco admitted that Plaintiff's termination resulted from absences that should have constituted FMLA leave is both flawed and belied by the record. (See Pl.'s Mem. 13–16.) As discussed above, Plaintiff was not on, nor did she request, FMLA leave for July 18 and 19. Moreover, Plaintiff mischaracterizes Pacheco's testimony. Contrary to Plaintiff's claim, Pacheco repeatedly testified that Plaintiff "was recommended for termination [in] October 2016 because of her overall record." (See Defs.' Reply 56.1, Ex. K ("Pacheco Dep. Tr.") 26:11; 30:11, 49:9; 51:5, ECF No. 38-12.)

11

28 U.S.C. § 1367(c)(3). These claims are therefore dismissed, without prejudice, for lack of subject-matter jurisdiction

                                        SO ORDERED.

Dated: Brooklyn, New York           /s/ LDH
       September 28, 2020           LaSHANN DeARCY HALL
                                    United States District Judge